(803 P.2d 581)

No. 65,061

STATE OF KANSAS, *Appellee*, v. JIMMIE D. OYLER, SR., *Appellant*.

Opinion filed December 21, 1990.

*Pamela S. Thompson*, of Horton, for the appellant.

*Melinda S. Whitman*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before LARSON, P.J., DAVIS, J., and RICHARD W. WAHL, District Judge Retired, assigned.

DAVIS, J.: The defendant, Jimmie D. Oyler, Sr., appeals his convictions on three counts of the possession of more than 200 cigarettes without the required tax indicia in violation of K.S.A. 79-3321 and K.S.A. 79-3322 and on three counts of the sale of cigarettes at retail that did not bear the Kansas tax indicia in violation of K.S.A. 79-3321 and K.S.A. 79-3322. He contends that the State of Kansas lacks jurisdiction because he is a Cherokee Indian and his smokeshop is on Indian land.

Jimmie D. Oyler, Sr., owns and operates Shawnee Jim's Indian Country Smokeshop (Smokeshop) located in rural Johnson County, Kansas. Oyler is an enrolled member of the Cherokee Nation. The Smokeshop is on Shawnee Reserve 206, which Oyler claims is Indian land.

The Kansas Department of Revenue determined that Oyler was not eligible to possess or sell cigarettes without Kansas tax stamps and denied his request for permission to allow a wholesaler to sell untaxed cigarettes to him. In August 1988, the Kansas Director of Taxation notified Oyler that he was violating Kansas law for selling nontaxed cigarettes from his Smokeshop and ordered Oyler to cease and desist.

On December 2, 1989, Kansas Bureau of Investigation Special Agents Nathan Yonally and Richard Marchewka, working undercover, entered the defendant's Smokeshop and purchased three cartons of cigarettes. None of the cigarette packages had Kansas tax stamps on them and Agent Yonally did not pay sales tax. The defendant did not ask the agent if he was an Indian. On January 13, 1990, and again on January 20, 1990, Agent Marchewka returned to the defendant's Smokeshop and purchased three cartons of cigarettes each time. Again, none of the cigarette packages bore a tax stamp and the agent did not pay sales tax on either purchase. The defendant did not ask the agent if he was an Indian.

Based upon a complaint filed, a warrant for the defendant's arrest was executed and approximately 8,888 cartons of cigarettes, money from cigarette sales, and records concerning sale of cigarettes were seized at the time of his arrest.

The defendant filed a motion to dismiss for lack of jurisdiction, asserting that the Kansas courts lack jurisdiction based on (1) the Treaty of 1831 with the Shawnee Tribe, (2) the Kansas Organic Act and the Admission Act, and (3) general federal Indian law. The trial court, without opinion, dismissed the defendant's motion. He was tried and convicted on all counts. This appeal follows.

There are two separate yet closely related jurisdictional issues involved in this appeal: First, whether the State of Kansas has criminal jurisdiction over the defendant for selling nontax-stamped cigarettes in violation of K.S.A. 79-3321 and K.S.A. 79-3322; second, whether the State of Kansas has jurisdiction to impose

its cigarette tax and sales tax on the sale of cigarettes from the defendant's Smokeshop.

## Criminal Jurisidiction

Historically, treaties between the United States and Indian tribes have conferred jurisdiction on the Indian tribal courts and on the federal courts by Congressional Act. State laws "are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 170-71, 36 L. Ed. 2d 129, 93 S. Ct. 1257 (1973). "In 1940, Congress enacted the Kansas Act, 18 U.S.C. § 3243 (1982), conferring criminal jurisdiction on the State of Kansas over state offenses committed by or against Indians on Indian reservations located within the State of Kansas." *Iowa Tribe of Indians v. State of Kan.*, 787 F.2d 1434, 1436 (10th Cir. 1986). 18 U.S.C. § 3243 (1988) (same as 1982) states:

"Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

"This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations."

The appellate courts of this state have held that Kansas has "jurisdiction over all crimes committed by or against Indians on Indian reservations located in Kansas" and the United States and Kansas have concurrent jurisdiction "over crimes listed in the Federal Major Crimes Act, 18 U.S.C. § 1153." *State v. Nioce*, 239 Kan. 127, 131, 716 P.2d 585 (1986). When interpreting the same apparent ambiguity between the first and second paragraphs of 18 U.S.C. § 3243, the Tenth Circuit held that "the State of Kansas has jurisdiction over non-major state offenses committed by or against Indians on Indian reservations located in the State of Kansas." *Iowa Tribe of Indians v. State of Kan.*, 787 F.2d at 1440.

On its face, 18 U.S.C. § 3243 applies to all Indians on Indian reservations in Kansas, including restricted allotments such as the land upon which defendant's Smokeshop is located. The defendant

testified his Smokeshop was located on Shawnee Reserve 206, a restricted Indian allotment. A letter from the Bureau of Indian Affairs stated that defendant's property was within the 200,000-acre allotment created by the Treaty of 1854. This letter was attached to the defendant's brief in the trial court in support of his motion to dismiss. The defendant, a Cherokee Indian, was charged with violating Kansas tax laws by selling untaxed cigarettes to non-Indians from his Smokeshop located on a restricted allotment.

The defendant argues that 18 U.S.C. § 3243 does not apply to him as a member of the Loyal Shawnee, Cherokee Nation. He contends that the legislative history of 18 U.S.C. § 3243 clearly indicates that the application of the federal act applies only to four tribes of the northeast Kansas area consisting of the Iowa, Kickapoo, Sac and Fox, and Potawatomi. Defendant argues that since Congress has not acted concerning the Shawnee or Cherokee, the treaties between the Shawnee and the United States control and Kansas does not have jurisdiction over him.

The legislative history of 18 U.S.C. § 3243 upon which the defendant relies consists of a letter and memorandum dated March 16, 1940, from E.K. Burlew, Acting Secretary of the Interior. The purpose and intent of the statute was, in the absence of tribal courts, to codify the existing practice of jurisdiction in the state courts over the Indians at the request of the Indians. Burlew's letter and memorandum do not name any specific tribes but refer to "the four Kansas tribes." Burlew's letter states:

"In the case of *the four Kansas reservations,* however, no tribal courts have existed for many years, and the Indians do not desire their reestablishment at this late date. . . . [T]he tribal councils of *the four Kansas tribes* have recommended the enactment of legislation authorizing its continuance by a transfer of jurisdiction to the State." (Emphasis added.)

The memorandum states:

"On *the four Indian reservations in Kansas,* however, there are no tribal courts and there have been none for many years.

. . . .

*The four tribes located on the Kansas reservations* do not desire reestablishment of the tribal courts, but have expressed a wish that the jurisdiction hitherto exercised by the State courts be continued. The tribal councils of all four tribes have gone on record in favor of a transfer of jurisdiction in criminal matters to the State." (Emphasis added.)

By 1940, the United States Department of the Interior only recognized four tribes on Kansas reservations. The four federally recognized Indian reservations in Kansas are the Iowa, Kickapoo, Potawatomi, and Sac and Fox. The Confederation of American Indians, *Indian Reservations: A State and Federal Handbook,* pp. 91-96 (1986). The Shawnee are not federally recognized in Kansas. In 1869, the Shawnee were incorporated by the Cherokee Nation, agreed to abandon their tribal organization, and were relocated in Oklahoma. Agreement between Shawnee and Cherokee, June 9, 1869.

The interpretation of a statute is a question of law and it is the function of this court to interpret a statute to give it the effect intended by the legislature. "It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained." *NCAA v. Kansas Dept. of Revenue,* 245 Kan. 553, 557, 781 P.2d 726 (1989).

We believe that the legislative history, together with the wording of 18 U.S.C. § 3243, indicates that Congress was acting in Kansas on behalf of all known and recognized Indians in the state. We conclude that the intent of Congress in enacting 18 U.S.C. § 3243 was to confer criminal jurisdiction on the State of Kansas over all Indians in Kansas. 18 U.S.C. § 3243 confers criminal jurisdiction on the State of Kansas over the defendant. We conclude that, based upon 18 U.S.C. § 3243, defendant is subject to the provisions of K.S.A. 79-3321 and K.S.A. 79-3322.

Kansas Jurisdiction to Impose Cigarette

Tax and Sales Tax on the Sale of

Cigarettes from Defendant's Smokeshop

The State does not contend that it has the power to tax on-reservation sales to Indians, but rather contends that Kansas has the power to tax sales to non-Indians.

In *Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 48 L. Ed. 2d 96, 96 S. Ct. 1634 (1976), deputy sheriffs arrested two Indians operating a smokeshop on a reservation for failure to possess a cigarette retailer's license and for selling nontax-stamped cigarettes. In a civil action seeking declaratory and injunctive relief, the court interpreted Montana's taxing authority in light of 28

U.S.C. § 1341. The Supreme Court held that "the cigarette sales tax as applied to on-reservation sales by Indians to non-Indians conflict[s] with the federal statutes that provide the basis for decision with respect to such impositions" but that when "on-reservation 'smokeshops' sell to non-Indians upon whom the State has validly imposed a sales tax with respect to the article sold, the State may require the Indian proprietor simply to add the tax to the sales price and thereby aid the State's collection and enforcement of the tax." 425 U.S. at 464-65.

In *Washington v. Confederated Tribes*, 447 U.S. 134, 65 L. Ed. 2d 10, 100 S. Ct. 2069, *reh. denied* 448 U.S. 911, 65 L. Ed. 2d 1172, 1013 S. Ct. 25 (1980), certain Indian tribes sought declaratory and injunctive relief from Washington's attempt to impose its cigarette excise tax and sales tax to nontribal members at on-reservation tobacco outlets. The court held that a cigarette tax imposed by the tribe on non-tribal purchases was valid but did not prevent the state from imposing its own tax. 447 U.S. at 152-57. The court affirmed and extended *Moe* to apply to purchases by non-tribal purchasers as well as non-Indian purchasers. 447 U.S at 160-62. "Principles of federal Indian law . . . do not authorize Indian tribes to market an exemption from state taxation to persons who would normally do their business elsewhere." 447 U.S. at 136. The State of Kansas, therefore, has jurisdiction to tax the sale of cigarettes sold on reservation land to non-tribal members and non-Indians.

Affirmed.