**Jimmie D. OYLER, Petitioner,**

v.

**Fred ALLENBRAND, et al., Respondents.**

No. 91–3121–DES.

United States District Court,
D. Kansas.

March 18, 1993.

As corrected by nunc pro tunc
order March 25, 1993.

---

Pamela S. Thompson, Stratford, CT, for petitioner.

Susan G. Stanley, Office of the Atty. Gen., Dept. of Animal Health, Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, who is not incarcerated, but was on probation at the time he filed this petition, was convicted of three counts of possession of more than 200 cigarettes without the required tax indicia in violation of K.S.A. 79–3321 and K.S.A. 79–3322 and three counts of the sale of cigarettes at retail that did not bear the Kansas tax indicia in violation of K.S.A. 79–3321 and K.S.A. 79–3322. Petitioner was sentenced to two years probation.

In this action, petitioner challenges his conviction and claims: (1) the state court lacked criminal subject matter jurisdiction; and (2) the state court's failure to abide by the Treaty of 1831 with the Shawnee violated petitioner's civil rights pursuant to 42 U.S.C. § 1983.

Having reviewed the record in this matter, the court makes the following findings and order.

*Factual and Procedural Background*

Petitioner, an enrolled member of the Cherokee Nation, is the owner and operator of Shawnee Jim's Indian Country Smokeshop which is located in rural Johnson County, Kansas. Petitioner argues the Smokeshop is on Shawnee Reserve 206 which he claims is Indian land.

The Kansas Department of Revenue determined that petitioner was ineligible to possess or sell cigarettes without Kansas tax stamps. Petitioner continued to do so and was subsequently arrested for violating K.S.A. 79–3321 and K.S.A. 79–3322. Petitioner filed a motion to dismiss citing lack of jurisdiction. Specifically, petitioner claimed the Kansas courts lacked jurisdiction based on the Treaty of 1831 with the Shawnee Tribe, the Kansas Organic and Admission Act, and general federal Indian law. The trial court dismissed the motion. Petitioner was tried and convicted and the Kansas Court of Appeals affirmed. 15 Kan.App.2d 78, 803 P.2d 581. The Kansas Supreme Court denied petitioner's petition for review.

In April 1991, petitioner filed this federal habeas corpus action. On September 3, 1992, this court, on its own motion, stayed the proceedings until the United States Su-

preme Court rendered its decision in *Negonsott v. Samuels*, 933 F.2d 818 (10th Cir.1991) cert. granted — U.S. ——, 112 S.Ct. 3024, 120 L.Ed.2d 896 (1992). That decision has now been rendered and the case at bar is ripe for determination.

### Discussion

 Petitioner's first claim is that the State of Kansas lacked criminal subject matter jurisdiction in this case. Petitioner's argument is that the Treaty of 1831 with the Shawnee prohibits the state from exerting criminal jurisdiction over crimes on Indian land. Respondent argues, and the Kansas Court of Appeals held, that petitioner is subject to state criminal jurisdiction pursuant to 18 U.S.C. § 3243, the Kansas Act (the Act).

Criminal offenses by or against Indians have generally been subject only to federal or tribal laws except where Congress "in the exercise of its plenary and exclusive power over Indian affairs" has explicitly directed that state laws shall apply. *Washington v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 470–71, 99 S.Ct. 740, 746, 58 L.Ed.2d 740 (1979) quoting *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261, 36 L.Ed.2d 129 (1973). Congress expressly provided that state laws should apply when it passed the Kansas Act.

The Act provides:

> Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

> This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the United States committed by or against Indians on Indian reservations. Act of June 8, 1940, ch. 276, 54 Stat. 249 (codified at 18 U.S.C. § 3243).

By its plain language, 18 U.S.C. § 3243 applies to all Indians on all Indian land in Kansas. This includes restricted allotments such as the land where petitioner's smokeshop is located. Petitioner in his petition,

and in his testimony in state court, admits that his Smokeshop is located on a restricted Indian allotment. By the very language of the Act, petitioner and the crime are within the charge of the act.

 Jurisdictional statutes are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes. *Palmore v. United States*, 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973). The court's task in interpreting a statute is to "give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, — U.S. ——, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) (internal quotation marks omitted). In *Negonsott*, the Court found that the first sentence of the Act "unambiguously confers jurisdiction on Kansas to prosecute all offenses ... committed by or against Indians on Indian reservations in accordance with state law." *Id.* at ——, 113 S.Ct. at 1120.

While *Negonsott* concerned the interplay between the Act and The Indian Major Crimes Act, 18 U.S.C. § 1153, this court finds the interpretation of the first sentence of the Act applicable to the case at bar. The language of the statute is plain and unambiguous. The wish of Congress was to confer on the State of Kansas the jurisdiction over all crimes committed by or against Indians on Indian reservations.

 Petitioner has testified to, and admitted that, his restricted allotment falls within the meaning of the Act, however, he concludes the State does not have jurisdiction because of the Treaty of 1831. Petitioner asserts that the Act is applicable only to the four tribes recognized in Kansas at the time the Act became law. Those tribes were the Iowa, Kickapoo, Potawatomi, and Sac and Fox. Because of the pre-existing treaty, petitioner argues the Act cannot apply to him, a loyal Shawnee, enrolled Cherokee.

 The court does not concur. The wording of the statute and the interpretation of the statute by the courts, leads to the conclusion that Congress was acting in Kan-

sas on behalf of all Indians when it enacted 18 U.S.C. § 3243. The intent of Congress was to confer criminal jurisdiction on the State of Kansas over all Indians in Kansas. The Act confers criminal jurisdiction on the State of Kansas over the petitioner. Any other interpretation would lead to inconsistent and incongruent results. Under petitioner's interpretation, only the Iowa, Kickapoo, Potawatomi, and Sac and Fox would be subject to the provisions of the Act. Any other Indian in the state of Kansas would not be subject to state criminal jurisdiction. The court believes such a nonsensical result cannot reflect the will of Congress. Statutes must always be interpreted with a view toward avoiding absurd results. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Petitioner's first claim is without merit.[1]

Petitioner next claims that the action of the State of Kansas violated his civil rights pursuant to 42 U.S.C. § 1983. Such a claim is improper in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and must be dismissed.

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is dismissed, with prejudice, and all relief denied.

IT IS FURTHER ORDERED that to the extent petitioner was attempting file a claim pursuant to 42 U.S.C. § 1983, that claim is dismissed as improperly raised in a federal habeas corpus action.

---

1. While a long discourse on the law of treaties with Native Americans is not necessary to the outcome of the case before this court, a comment on the Treaty of August 8, 1831, on which petitioner relies, is warranted. Although research has produced no explicit abrogation of the treaty, modifications did occur on October 26, 1832; December 29, 1832; May 10, 1854; and February 23, 1867.

Although an intention to alter or abrogate a treaty should not be lightly attributed to Congress, in the case of conflict, a later act of Congress will control. *United States v. Payne*, 264 U.S. 446, 448, 44 S.Ct. 352, 352, 68 L.Ed. 782 (1923); *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 412, 88 S.Ct. 1705, 1710, 20 L.Ed.2d 697 (1968). An express abrogation is not necessary if the intent of Congress is sufficiently clear. *Dennison v. Topeka Chambers Indus. Development*, 527 F.Supp. 611, 620 (D.Kan. 1981), affd. 724 F.2d 869 (10th Cir.1984).

The Court's clear statement of the import and interpretation of the Kansas Act in *Negonsott* is controlling here.