**Kathy L. KAUL, Plaintiff,**

v.

**Attorney General Robert STEPHAN, Defendant.**

**No. 91–4118–RDR.**

United States District Court, D. Kansas.

Nov. 8, 1994.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

Deanne W. Hay, Martha A. Peterson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, Terry D. Hamblin, John W. Campbell, Office of the Atty. Gen., Kan. Judicial Center, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges her rights against an unconstitutional search and seizure were violated by defendant. This case is now before the court upon defendant's motion for summary judgment.

The standards governing summary judgment motions were reviewed in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505, 2509 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548, 2553 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a

genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348, 1355–57 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The following facts appear uncontroverted.

Plaintiff is a Citizen Band Potawatomie Indian. She does not belong to the Prairie Band Potawatomie Tribe. Defendant is the Attorney General of the State of Kansas. Plaintiff owns the Indian Country General Store which is located on the Prairie Band Potawatomie Indian Reservation in Jackson County, Kansas. The store opened on November 1, 1990.

Plaintiff submitted a business tax application to the Kansas Department of Revenue on or about October 10, 1990. Plaintiff alleged that she was exempt from sales tax because the store would operate on an Indian reservation. Plaintiff was not issued a sales tax number by the Department of Revenue. In February 1992, Mark Ciardullo, the bureau chief of the business tax bureau of the Department of Revenue testified that no sales tax number was issued because the policy of the Department was that sales transactions on Indian reservations were exempt from sales tax. It was further testified by the general counsel of the Department of Revenue that the same policy prevailed at that time—February 1992—and that it had been the policy for many years. It was acknowledged, though, that the exemption from sales tax was not "enumerated" in the statutes.

K.S.A. 79–3321 states broadly that it is unlawful for any person to possess more than 200 cigarettes without the required tax indicia except as "specifically provided by this act." There is no specific provision permitting retailers on Indian reservations to possess untaxed cigarettes. The statute does permit wholesalers to sell cigarettes to retail-

ers operating on Indian reservations and who for that reason may be exempt from state licensing. But, this provision does not say that retailers on an Indian reservation may sell cigarettes to non-Indians without collecting taxes.

In contrast to the February 1992 testimony of the Department of Revenue officers, on June 6, 1988 the Kansas Department of Revenue issued a notice to Kansas cigarette wholesalers which stated that to qualify for an exemption from sales tax on sales inside Kansas:

> [cigarette] sales must be made only to members of the same tribe as the one which controls the reservation and regulates the retailer. Sales made to non-Indians or members of other Indian tribes are not exempt from Kansas cigarette tax.

This notice is consistent with Attorney General Opinion No. 89–115 which was requested by the general counsel of the Kansas Department of Revenue. The opinion states that Indian retailers operating on reservations may be required to collect and remit cigarette taxes when the legal incidence of the tax falls on non-Indian purchasers. The opinion was issued on September 12, 1989. The Kansas Court of Appeals reached the same conclusion in *State v. Oyler*, 15 Kan. App.2d 78, 803 P.2d 581 (1990) which was issued on December 21, 1990. That opinion affirmed the conviction of an enrolled member of the Cherokee Indian Nation for possessing more than 200 cigarettes without the required tax indicia in violation of K.S.A. 79–3321. Defendant is listed as one of the counsel for the State in the *Oyler* case.

Defendant has stated in an affidavit that he had a meeting with the general counsel of the Department of Revenue and the Secretary of the Department in May or June 1991. Defendant has stated that at the meeting he was requested to assist in prosecuting plaintiff for a violation of criminal tax statutes—specifically, failing to collect and remit state sales taxes and cigarette and tobacco taxes. The now former general counsel has stated in an affidavit that, after discussing defendant's affidavit with the now former Secretary of the Department of Revenue, he has no personal recollection of the meeting.

Defendant assigned Deputy Attorney General Ed Van Petten to research and investigate plaintiff's store and its tax responsibilities. On June 17, 1991, Mark Ciardullo executed an affidavit stating that plaintiff did not have a current valid Kansas retailers' sales tax registration certificate and was not remitting sales tax to the Department of Revenue. The affidavit was used to obtain a search warrant for plaintiff's store on June 18, 1991 from the Hon. Judge Tracy D. Klinginsmith of the district court of Jackson County, Kansas.

. Defendant participated in the execution of the search warrant. Officers noticed cigarettes for sale that did not bear a Kansas tax stamp. On the basis of this observation, a second search warrant was applied for and issued the same afternoon. Defendant did not appear before Judge Klinginsmith to apply for either one of the search warrants. Nor did he make any written representation in support of the search warrants. Deputy Attorney General Van Petten applied for both search warrants.

At the time of the execution of the search warrants, plaintiff possessed copies of two letters issued by the Kansas Department of Revenue. One letter, dated June 23, 1989 and addressed to an attorney in Lawrence, Kansas, stated that the Department of Revenue cannot require Indian nations to collect and remit sales and cigarette taxes to the State of Kansas. The second letter, dated November 7, 1990 and addressed to Paul Campbell of the Georgia–Pacific Corporation, states that the Department was reviewing the statements made in the June 23, 1989 letter and considering whether sales made to businesses on an Indian reservation were exempt from sales tax. The letter further advised that Georgia–Pacific continue to consult with its counsel and await the result of a request for a private letter ruling.

Plaintiff has stated in an affidavit that she showed these letters to defendant when the search warrants were being executed, but that he "disregarded the letters and stated 'he could do whatever he wanted' since he is

the Attorney General ..."[1] Defendant has denied seeing the letters any time before his deposition in August 1994.

Approximately 5,300 cartons of untaxed cigarettes were removed from plaintiff's store. Defendant assisted officers in carrying the cigarettes from the store.

Criminal misdemeanor proceedings were brought against plaintiff in the district court of Jackson County, Kansas. Plaintiff was charged with failure to make a retail sales tax return and possessing more than 200 cigarettes without the required tax indicia. The district court determined that it had jurisdiction to consider the charges. A jury trial was held on February 3–4, 1992. The prosecution dismissed the failure to make a tax return charge. The jury acquitted plaintiff of the untaxed cigarettes charge.

In summary, this case presents the court with evidence of a long-standing, rather informal Kansas Department of Revenue policy holding that sales occurring on Indian reservations are not subject to state sales tax, in spite of a departmental notice to Kansas cigarette wholesalers, statutory language, a state attorney general opinion, and state and federal court cases which support the opposite position. The court is also presented with evidence of a search warrant for plaintiff's store supported by an affidavit from a Department of Revenue officer which states that plaintiff's store did not have a sales tax certificate and was not remitting sales tax, even though the same agency denied plaintiff's application for a sales tax certificate months before on the grounds that plaintiff was exempt from paying sales taxes. The court has no evidence that defendant participated in the investigation in any way other than: assigning Mr. Van Petten to direct an investigation; being at the store when the search warrants were executed; and helping to carry cigarettes from the store. There is no evidence that defendant investigated this matter prior to the initial application for a search warrant or that defendant was present during the application for either search warrant or helped apply for either search warrant. There is evidence that while defendant was helping to execute the warrant he was presented with two letters which plaintiff said supported her store's exemption from Kansas sales tax requirements.

The question before the court is whether the law supports a cause of action under § 1983 against defendant and whether a reasonable jury could find defendant liable under § 1983 viewing the uncontroverted facts in a light most favorable to plaintiff.

Initially, it is important to review plaintiff's allegations in the second amended complaint. Plaintiff alleges that defendant is responsible for obtaining the search warrants absent probable cause because he improperly investigated the facts in this case and because he was grossly negligent in supervising and training the employees who secured the warrants. ¶ 19, Second Amended Complaint. Plaintiff asserts that a properly performed investigation would have discovered: that plaintiff applied for but was refused a sales tax certificate on the grounds that plaintiff was exempt from Kansas sales tax; that plaintiff is exempt from Kansas sales tax; that plaintiff had letters which reaffirmed the exemption; that the taxpayer bill of rights (K.S.A. 79–3268) entitled plaintiff to rely on the letters; that the exemption had not been rescinded or plaintiff was not notified of any such rescission; that plaintiff was entitled to possess untaxed cigarettes because she operated on an Indian reservation; and that the state legislature, in K.S.A. 79–3321, and the Department of Revenue, in K.A.R. 92–5–5, consented to the sale and transportation of unstamped cigarettes on Indian reservations. ¶ 21(a–l), Second Amended Complaint. The complaint also asserts that defendant or investigators of the defendant, at defendant's direction, presented false evidence to the judge who issued the search warrants. ¶¶ 24 and 28.

▪ We find two arguments for summary judgment to be persuasive in this case. First, defendant has contended that summary judgment is proper because he did not personally participate in any arguably illegal conduct. The following discussion in *Wood-*

---

1. The second amended complaint attributes this statement to Mr. Van Petten as does a previous

affidavit signed by plaintiff and attached to a response to a prior motion. See Doc. No. 59.

*ward v. City of Worland,* 977 F.2d 1392, 1399–1400 (10th Cir.1992) explains what must be demonstrated to find supervisors liable under 42 U.S.C. § 1983.

[I]f a plaintiff merely shows that a supervisor "should have known" that a subordinate was violating someone's constitutional rights and it is not established that the supervisor actually had such knowledge, the plaintiff will not have established a deliberate, intentional act by the supervisor to violate constitutional rights. At most, the plaintiff will have established only that the supervisor was negligent in not observing what he should have seen. The Supreme Court has made it clear that liability under § 1983 must be predicated upon a *"deliberate"* deprivation of constitutional rights by the defendant. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). It cannot be predicated upon negligence. *Daniels,* 474 U.S. at 330, 106 S.Ct. at 664; *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990).

The Supreme Court's explicit holding in 1989 in *City of Canton* of a scienter requirement for § 1983 liability negates any dicta that may have appeared in earlier cases suggesting that supervisor liability may be predicated upon negligence of any kind.

[S]upervisor officials may be liable under section 1983 when their failure to train subordinate employees was so severe as to constitute 'deliberate indifference'.... Earlier decisions finding that grossly negligent training may give rise to supervisory liability are no longer good law, given the specific rejection in *City of Canton v. Harris* of gross negligence in favor of deliberate indifference.

Schwartz & Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees,* § 7.11 at 386.

We are persuaded that the proper articulation of the test for supervisory liability under section 1983 is that set forth by the Third Circuit in *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3rd Cir.1990), where it was stated that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence." *Id.* at 1478. Indeed, in a case that preceded *Meade* [*v. Grubbs,* 841 F.2d 1512 (10th Cir.1988)], we used language that closely parallels the test set forth in *Andrews. See Kite v. Kelley,* 546 F.2d 334, 337 (10th Cir.1976) (holding in a *Bivens* action that "before a supervisor may be held for acts of an inferior, the superior ... must have participated or acquiesced in the constitutional deprivations"). *See also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (supervisor liability requires an "affirmative link [between the supervisor and the subordinate] showing [the supervisor's] authorization or approval of such misconduct"); *Greason v. Kemp,* 891 F.2d 829, 336–37 (11th Cir.1990).

In *Woodward,* the Tenth Circuit also stated that allegations that a defendant committed "gross" negligence or that a defendant "should have known" of unconstitutional conduct are insufficient to establish the liability of a supervisor.

Merely characterizing the negligence as "gross" does not change its essential character. Negligence is carelessness and gross negligence is simply gross carelessness. Neither simple nor gross negligence implies an intentional and deliberate violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983. In contrast, recklessness does include an element of deliberateness—"a *conscious* acceptance of a known, serious risk." *Archuleta v. McShan,* 897 F.2d at 499 (emphasis added). As such, recklessness is generally regarded as satisfying the scienter requirement of section 1983 because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk. *Id.* at 499. However, merely asserting that the defendant "should have known" of unconstitutional behavior on behalf of his or her subordinates without establishing an intentional, conscious, and deliberate act by the defendant participat-

**1258**

ing in, or knowingly acquiescing in, the unconstitutional behavior fails to allege the requisite scienter for § 1983 liability.

977 F.2d at 1399 n. 11.

In the instant case, with regard to plaintiff's primary contention that the search warrants were applied for absent probable cause, plaintiff has made only conclusory accusations regarding defendant's knowledge of the investigation, direction of the investigation and training of the investigators. There is no evidence in the record of how the training was inadequate. More importantly, there is no evidence of how defendant directed the investigation or that he had knowledge of plaintiff's efforts to obtain a sales tax certificate. The evidence shows that defendant assigned a deputy attorney general to conduct the investigation and the deputy attorney general applied for the search warrants. Although, as in other cases, defendant had "sign-off" authority in this matter, defendant's only direct involvement in the investigation was during the execution of the search warrants. There is no evidence that defendant was aware of conflicting Department of Revenue policies or actions at any time during the investigation. We do not believe the failure to develop such information by himself, when defendant had delegated the ground work for the investigation to his staff, demonstrated deliberate indifference or a reckless disregard for plaintiff's rights against an illegal search. See *Langley v. Adams County*, 987 F.2d 1473, 1481 (10th Cir.1993) (conclusory allegations of deliberate indifference by county commissioners who were not responsible for terminating the plaintiff without due process are insufficient to avoid summary judgment in favor of the commissioners).

In sum, plaintiff's claim that search warrants were applied for absent probable cause does not mesh with evidence that defendant meaningfully participated in the application for the search warrants. In a Tenth Circuit case, *Salmon v. Schwarz*, 948 F.2d 1131, 1136–37 (10th Cir.1991), the court affirmed summary judgment for a defendant against a civil rights claim alleging an arrest without probable cause when the defendant did not participate in the application for arrest and

search warrants. See also, *Morris v. County of Tehama*, 795 F.2d 791, 795 (9th Cir.1986); *Davison v. Frey*, 837 F.Supp. 235, 240 (E.D.Mich.1993). On the basis of this authority and because the evidence does not establish defendant's personal direction, actual knowledge, acquiescence, recklessness or deliberate indifference, we believe defendant is entitled to summary judgment against any claim of misconduct in applying for or receiving the search warrants in this case.

■ While plaintiff claims and defendant concedes that he participated in the execution of the search warrants, there is no claim that the search warrants were executed unconstitutionally. The only claim regarding defendant's conduct during the execution of the search warrants is that he failed to halt the search and seizure process after being shown two letters plaintiff possessed to support her claim of tax exempt status. We do not believe this is a claim of unconstitutional conduct.

Assuming for the purposes of this order that defendant saw the two letters during the progress of the search, we do not believe that either letter supported the cessation of the search. Neither letter was addressed to plaintiff. One letter dated in 1989 was addressed to an attorney who is alleged to have been plaintiff's attorney. It is not clear that this lawyer was representing plaintiff in 1989, however. Furthermore, the letter concerns the State's power to direct Indian nations to collect and remit sales tax. The letter does not concern the power of the State to require an individual retailer to collect and remit sales tax, particularly when that retailer does not belong to the tribe on the reservation. The second letter, which was addressed to someone with the Georgia–Pacific Corporation, concerns whether a wholesaler may sell goods to plaintiff's store without paying sales tax. The letter does not take a definite position on the issue. Rather, the letter states that the matter is under study. After the letter was written but before the search, the Kansas Court of Appeals issued its decision in *State v. Oyler, supra,* which supports the State's authority to tax the on-reservation sale of cigarettes to non-Indians.

Since the letters were not addressed to plaintiff, we do not believe the "taxpayer bill of rights" provisions of K.S.A. 79–3268 apply. Subsection (b) of the statute permits taxpayers to rely upon written advice *they* have received from the Department of Revenue. The letters also do not qualify as "private letter rulings" and, if they did, they would have lost any force regarding a claimed exemption from sales taxes on sales to non-Indians by virtue of the *Oyler* decision. See K.A.R. 92–19–59. In sum, the court does not believe the presentation of the two letters to defendant, if it occurred, provided reasonable grounds to suspend the search of plaintiff's store. See *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979) (the Constitution does not require an officer to "investigate independently every claim of innocence" when executing an arrest warrant).

■ The second persuasive argument in defendant's motion is that defendant is entitled to qualified immunity from liability. Since qualified immunity is raised as a defense, plaintiff has the burden of identifying with particularity the clearly established law and the conduct by defendant which violated that law. *Langley v. Adams County, supra*, 987 F.2d at 1476 (10th Cir.1993) quoting *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir.1992).

At the time of the search, we do not believe the law was clearly established that plaintiff was exempt from Kansas sales tax and cigarette tax provisions on sales to non-Indians. U.S. Supreme Court cases at that time had confirmed the power of states to tax on-reservation cigarette sales to non-Indians. *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980); *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Six months prior to the search warrants for plaintiff's store, the Kansas Court of Appeals agreed with defendant's position in the *Oyler* case. There, the court affirmed the conviction of an Indian for possession and sales of cigarettes without tax stamps, although it was argued that the State had no jurisdiction to impose cigarette and sales taxes on purchases which allegedly occurred on Indian land. A 1988 Department of Revenue notice suggested that cigarette sales to non-Indians or non-tribal members were subject to state taxation. An affidavit from a Department of Revenue officer supported the search warrants. Finally, there was no state statute or regulation which expressly exempted on-reservation sales to non-Indians from state taxation.

We acknowledge plaintiff's evidence that the Department of Revenue had an unwritten policy against taxing sales on Indian reservations and that this policy was executed to deny plaintiff's request for a sales tax certificate. We also acknowledge the statutory language in K.S.A. 79–3321 and the regulatory language, K.A.R. 92–5–5, which indicate that *wholesalers* may ship untaxed cigarettes to Indian reservations. However, to reiterate, we must consider: the absence of an express exemption for retailers from sales taxes and cigarette taxes; the case law—including the affirmance of a state court conviction—which supported the State's authority to impose such taxes; and the affidavit from the Department of Revenue officer in support of the search warrants. Doing so, we conclude the law was not clearly established that plaintiff's store was exempt from state sales taxes and cigarette taxes on sales to non-Indians at the time of the search warrants.

Therefore, defendant's authorization and oversight of an investigation and defendant's participation in a court-authorized search of plaintiff's store to investigate the failure to pay sales taxes did not violate clearly established law against searches without probable cause. Authorizing an investigation did not violate a constitutional right which plaintiff has identified. Signing off as a supervisor on the further progress of the investigation also did not violate a clearly established legal right, looking at the record in a light most favorable to plaintiff.

Finally, defendant's participation in the actual searches did not violate a clearly established law which plaintiff has identified for

the court. Once again, the case of *Salmon v. Schwarz, supra,* provides support for this conclusion. There, summary judgment was affirmed in favor of an officer who read an affidavit for an arrest warrant and participated in its execution, but did not prepare the affidavit or apply for the warrant. As already stated, the court held that since the officer did not participate in the application for the warrant, he had no liability for any lack of probable cause. The court *further* held that an objectively reasonable officer would have believed the execution of a facially valid arrest warrant was proper and, therefore, that qualified immunity applied. 948 F.2d at 1140–41.

In summary, plaintiff makes conclusory statements that defendant was present when subordinates committed unconstitutional acts, or that defendant directed or acquiesced in the behavior of his subordinates, thereby becoming personally involved in the acts and liable as a participant or supervisor. Plaintiff has not submitted sufficient evidence to support these statements and thereby avoid defendant's summary judgment motion, which is adequately supported with evidence largely negating defendant's role in this matter. The court does not believe that knowledge of the investigation and a directive to begin an investigation equate to knowledge of, acquiescence in, or indifference to a constitutional violation. We do not believe the evidence in this case is sufficient to support a claim that defendant was involved in unconstitutional conduct or, assuming that unconstitutional conduct occurred, that a reasonable officer in defendant's position would have known that the conduct was unconstitutional.

For these reasons, defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**