Kathy L. KAUL, Plaintiff–Appellant,

v.

Robert T. STEPHAN, Attorney General, Defendant–Appellee.

No. 94–3428.

United States Court of Appeals, Tenth Circuit.

April 30, 1996.

Pantaleon Florez, Jr., of Florez & Frost, Topeka, KS, for Plaintiff–Appellant.

Deanne Watts Hay, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS (Martha A. Peterson, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, with her on the brief), for Defendant–Appellee.

Before EBEL, McKAY, and HENRY, Circuit Judges.

EBEL, Circuit Judge.

Appellant Kathy L. Kaul, a Citizen Band Potawatomi Indian, operates a general store on the Prairie Band Potawatomi Indian Reservation (the "Reservation") in Kansas. After learning that the Kansas Department of Revenue believed Kaul was violating state taxation laws, Appellee Robert Stephan, the then-Kansas Attorney General, assigned a member of his staff to investigate Kaul's business. When the investigation revealed that Kaul did not have a valid sales tax identification number, Stephan participated in a search of Kaul's store pursuant to two search warrants, which resulted in the seizure of 5,300 cartons of cigarettes. The state prosecuted Kaul for possessing cigarettes without the required tax indicia, but a jury acquitted her of the charges. Kaul then brought this action pursuant to 42 U.S.C. § 1983 against Stephan, arguing that he violated her Fourth Amendment right to be free from unreasonable searches and seizures. The district court granted summary judgment for Stephan, holding that Stephan did not personally participate in any unconstitutional activity, and, even if Stephan's actions were unconstitutional, he was shielded by qualified immunity. On appeal, Kaul challenges both of these conclusions. For the reasons stated below, we AFFIRM.

## Background

Kaul, a Citizen Band Potawatomi Indian, owns the Indian Country Lumber and Gener-

al Store, which is located within the Prairie Band Potawatomi Indian Reservation in Jackson County, Kansas. Prior to opening her store on November 1, 1990, Kaul submitted a business tax application to the Kansas Department of Revenue in October 1990. In the application, she alleged that she was exempt from sales tax because her store would operate on an Indian Reservation. The Department of Revenue did not issue Kaul a sales tax identification number because the department's policy at the time was that retailers operating on Indian reservations were exempt from the requirement of collecting and remitting Kansas retailers' sales tax. However, such an exemption was not enumerated in the Kansas Retailers' Sales Tax Act, K.S.A. § 79–3601 *et seq.*

In late May or early June of 1991, officials of the Kansas Department of Revenue, including the general counsel for the Department of Revenue, Mark Burghart, and the Secretary of Revenue, Mark Beshears, met with Stephan to request his assistance in prosecuting Kaul for failing to collect and remit Kansas retailers' sales taxes. The revenue department officials told Stephan that they believed Kaul was in violation of Kansas tax statutes and subject to prosecution under Kansas' criminal tax statutes. Neither Beshears nor Burghart disclosed to Stephan the department's policy of not taxing sales made on Indian reservations, nor did they tell Stephan that Kaul had applied for a tax identification number and that no number was issued because the department considered her exempt.

Stephan assigned the matter to Deputy Attorney General Edward Van Petten. On June 18, 1991, Van Petten applied for a search warrant to search and seize from Kaul's store records kept in the normal course of retail business. The application alleged a violation of K.S.A. § 79–3615(g), which establishes a criminal penalty for "any person who willfully fails to make a return or to pay any tax imposed under the Kansas

retailers' sales tax act...."[1] In support of the application, Van Petten attached an affidavit executed by Mark Ciardullo, bureau chief of the business tax bureau of the revenue department, which affirmed that Kaul did not have a Kansas retailers' sales tax registration certificate and that Kaul was not remitting Kansas' retailers' sales tax. A state district court judge issued the warrant on the same day.

Law enforcement officers, including Stephan, then proceeded to Kaul's store to execute the warrant. While executing the warrant at Kaul's store, a revenue department agent observed cigarettes for sale without the required tax stamp attached. Van Petten then applied for a second search warrant, this time alleging a violation of K.S.A. § 79–3321(a), which makes it "unlawful for any person ... [t]o possess, except as otherwise specifically provided by this act, more than 200 cigarettes without the required tax indicia being affixed as herein provided."[2] The warrant was issued and executed that afternoon, resulting in the seizure of approximately 5,300 cartons of untaxed cigarettes from Kaul's store. Stephan assisted the law enforcement officers by carrying several boxes of cigarettes out of Kaul's store.

Kaul alleges that during the search, she showed Stephan two letters written by the Department of Revenue which she claims exempt her from state taxation, although Stephan denies seeing these letters until he was deposed in connection with this case. The first letter, dated June 23, 1989, is a letter from Burghart to attorney Lance Burr. It states that the Department of Revenue's policy at that time was that it could not require certain "Indian Nations" to collect and remit excise taxes to Kansas. The second letter, dated November 7, 1990, is from Burghart to an employee of the Georgia–Pacific Corporation. The letter states that the revenue department was reviewing whether it had advised taxpayers that the

---

1. The application alleged specifically that Kaul was in violation of K.S.A. § 79–3607, which provides that "[r]etailers shall make returns to the director at the times prescribed by this section upon forms prescribed and furnished by the director...."

2. K.S.A. § 79–3322 establishes the penalty for a K.S.A. § 79–3321 violation as a misdemeanor, subjecting the perpetrator to a $1,000 fine or imprisonment of not more than one year, or both.

sale of goods by Kansas retailers to businesses on the Potawatomi Indian Reservation (such as Kaul's business) are exempt from Kansas sales tax. The letter also acknowledged Georgia–Pacific Corporation's request for a private letter ruling. Kaul alleges that despite showing these letters to Stephan, he decided to proceed with the search of her store.

The state brought criminal misdemeanor proceedings against Kaul in Kansas district court, charging her with failure to make a retail sales tax return in violation of K.S.A. § 79–3615(g) and possessing more than 200 cigarettes without the required tax in dicia in violation of K.S.A. § 79–3321. The state moved to dismiss the K.S.A. § 79–3615(g) charge, which the court granted. A jury acquitted Kaul of the K.S.A. § 79–3321 charge.

Kaul then brought this Section 1983 action in United States District Court against Stephan, arguing that Stephan violated her Fourth Amendment right against unconstitutional searches and seizures. The district court granted Stephan's summary judgment motion and dismissed the action on the grounds that: (1) Stephan neither participated in any arguably illegal conduct nor could be liable as a supervisor for his staff's conduct; and (2) Qualified immunity would shield Stephan from any liability arising out of Kaul's claims because any law prohibiting Stephan's actions was not clearly established. Kaul now appeals.

### Standard of Review

In *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793 (10th Cir.1995), we expressed the standard of review applicable to a district court's decision to grant summary judgment as follows:

We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court.

While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.

50 F.3d at 796 (citations omitted).

### Discussion

Kaul argues that Stephan is subject to Section 1983 liability because he violated her Fourth Amendment right to be free from unreasonable searches and seizures. Section 1983 provides in relevant part that:

[e]very person who, under color of [any law of] any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Here, Kaul alleges that Stephan deprived her of her Fourth Amendment rights because: (1) when he and his staff applied for and executed the search warrants, they lacked probable cause to believe that Kansas law prohibited Kaul's possession on an Indian reservation of cigarettes without tax indicia or that she had committed a crime; and (2) Stephan was without jurisdiction to execute the warrants within the boundaries of the

Reservation where Kaul's store is located.[3] Stephan replies that his actions did not deprive Kaul of any Fourth Amendment rights and, even if they did, he is shielded by qualified immunity. Before we consider whether qualified immunity shields Stephan, "we first must determine whether plaintiff's allegations, even if accepted as true, state a claim for violation of any rights secured under the United States Constitution." *Abeyta v. Chama Valley Indep. Sch. Dist.,* 77 F.3d 1253, 1255 (10th Cir.1996) (quotation omitted). Kaul has the burden of showing with particularity facts and law establishing the inference that Stephan violated a constitutional right. *Id.* We do not reach the issue of qualified immunity if Kaul's claim is not actionable. *Id.*

A. *Probable cause supporting the warrants*

■ The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

For a valid warrant to issue, it must appear from the affidavits supporting the application for the warrant that "there is probable cause to believe that an offense has been committed and that the defendant has committed it...." Fed.R.Crim.P. 4; *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991) (citing *Wong Sun v. United States,* 371 U.S. 471, 481 n. 9, 83 S.Ct. 407, 414 n. 9, 9 L.Ed.2d 441 (1963)).[4] Kaul argues that Stephan and his staff lacked probable cause to request the search warrants because the laws which the warrants alleged Kaul was violating do not apply to Indian retailers on reservations.

■ Well-established Supreme Court precedent prohibits states from taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation absent congressional consent. *McClanahan v. Arizona State Tax. Comm'n,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973); *Moe v. Salish and Kootenai Tribes,* 425 U.S. 463, 475–81, 96 S.Ct. 1634, 1642–45, 48 L.Ed.2d 96 (1976). However, similarly well established Supreme Court precedent permits states to require that Indian retailers on reservations collect and remit sales tax earned on sales made to non-Indians or to Indians who are not members of the tribe governing the reservation. *See Moe,* 425 U.S. at 481–83, 96 S.Ct. at 1645–46 (holding that Montana could require Indians

---

**3.** The district court concluded that Stephan's personal involvement in the investigation and search of Kaul's store was limited to his initiation of the investigation and his assistance in carrying boxes of seized cigarettes from Kaul's store. However, Kaul argues that Stephan also was responsible for the acts of applying for and searching pursuant to the search warrants because he was the supervisor of the officers who actually performed these acts. "[T]he proper articulation of the test for supervisory liability under Section 1983 ... requires 'allegations of personal direction or actual knowledge and acquiescence.'" *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) (citation omitted), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). Here, because there is no dispute that Stephan had knowledge of and acquiesced in Van Petten's application for the search warrants and the accompanying search of Kaul's store, we agree that the evidence would be sufficient to get the plaintiff to trial on the issue of Stephan's supervisory liability of Van Petten and perhaps on the issue of Stephan's direct liability for his own conduct in the event that we were to conclude that the warrants lacked probable cause. Accordingly, in deciding whether Kaul's Fourth Amendment rights were violated, we do not distinguish actions personally taken by Stephan from those taken by his staff of which he had personal knowledge and in which he acquiesced.

**4.** A state officer is not automatically shielded from Section 1983 liability merely because a judicial officer approves a warrant. *See Salmon,* 948 F.2d at 1136; *Malley v. Briggs,* 475 U.S. 335, 345–46, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1986). Rather, a state officer may face liability for obtaining a warrant not supported by probable cause when the application for the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable," despite a magistrate's authorization for the warrant. *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098 (citing *United States v. Leon,* 468 U.S. 897, 922–23 & 922 n. 23, 104 S.Ct. 3405, 3420–21 & 3420 n. 23, 82 L.Ed.2d 677 (1984)).

who sold cigarettes to non-tribal members to add the state's tax to the sale price of the cigarettes and thereby aid the state's collection and enforcement of the tax); *Oklahoma Tax Comm'n v. Potawatomi Tribe*, 498 U.S. 505, 512–13, 111 S.Ct. 905, 910–11, 112 L.Ed.2d 1112 (1991) (holding that states have authority to tax sales of cigarettes to non-members of the tribe); *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 159, 161–62, 100 S.Ct. 2069, 2084, 65 L.Ed.2d 10 (1980) (holding that state could require Indian tribe to affix tax stamps purchased from the state to individual packages of cigarettes prior to the time of sale to nonmembers of the tribe and that state has power off the reservation to seize unstamped cigarettes as contraband). Accordingly, federal law does not excuse Kaul from following Kansas tax provisions concerning the sale of cigarettes to nonmembers [5] of the Prairie Band Potawatomi Tribe.[6]

We therefore now turn to the issue of whether Kansas state law exempts Kaul from following the Kansas tax statute when sales are made to nonmember purchasers. We first note that neither K.S.A. § 79–3615(g) nor K.S.A. § 79–3321(a) on its face exempts Indian retailers from its reach. Regarding K.S.A. § 79–3615, the provision which enumerates the type of sales that are excluded from the Kansas Retailers' Sales Tax Act's provisions nowhere refers to sales by Indian retailers among its scores of exemptions. *See* K.S.A. § 79–3606(a)–(ss). Regarding the applicability of K.S.A. § 79–3321 to Kaul, the Kansas Court of Appeals in *State v. Oyler*, 15 Kan.App.2d 78, 803 P.2d 581 (1990), upheld the conviction of an Indian retailer selling cigarettes on federally recognized Indian lands for failing to comply with K.S.A. § 79–3321 when he did not collect and remit state

taxes on sales made to non-Indians. The court, relying on *Moe* and *Colville*, concluded that K.S.A. § 79–3321 enabled Kansas to entertain "jurisdiction to tax the sale of cigarettes sold on reservation land to non-tribal members and non-Indians." *Id.* 803 P.2d at 584. In the related case of *State v. Oyler*, 15 Kan.App.2d 84, 803 P.2d 585 (1990), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991), the Kansas Court of Appeals concluded that Kansas law authorized the forfeiture of cigarettes on Indian reservations found in quantities of twenty packages or more and not bearing the indicia of tax payment as required by Kansas law. Also, a June 6, 1988 notice to Kansas cigarette wholesalers from the Kansas Department of Revenue provided that in order for cigarette sales made to Indian retailers to qualify for an exemption from K.S.A. § 79–3321, "[t]he sales must be made only to members of the same tribe as the one which controls the reservation and regulates the retailer. Sales made to non-Indians or members of other Indian tribes are not exempt from Kansas cigarette tax." Similarly, in a 1989 attorney general opinion requested by Burghart regarding whether the state has jurisdiction to regulate the collection of certain taxes on recognized Indian reservations, Stephan informed the revenue department that:

Indian retailers operating on federally recognized reservations selling products which have been imported for sale are subject to the collect and remit requirements of the State's retailers' sales tax and cigarette tax acts when the legal incidence of the tax falls on non-Indian purchasers.

(Aple. Supp.App. at 278.) Kaul refers to no statutory exemption under these provisions

---

5. Our references to "nonmembers" of a particular tribe refer inclusively to all non-Indians and all Indians who are not members of the particular tribe.

6. Federal law also does not prohibit states from requiring that Indian retailers maintain records of their sales to both Indians and non-Indians. *See Colville*, 447 U.S. at 159–60, 100 S.Ct. at 2084–85 (upholding a state sales tax scheme that required Indian smokeshop operators to keep detailed records of both taxable and nontaxable transactions made to non-Indians as well as Indi-

ans); *Dept. of Taxation & Finance v. Milhelm Attea & Bros.*, —— U.S. ——, ——, 114 S.Ct. 2028, 2036, 129 L.Ed.2d 52 (1994) (noting that Supreme Court precedent permits states to impose on reservation retailers "minimal burdens reasonably tailored to the collection of valid taxes from non-Indians."). We believe that K.S.A. § 79–3615's requirement that Indian retailers file tax returns and keep accounting records imposes only a minimal burden reasonably tailored to the collection of taxes from non-Indians, and accordingly is not prohibited under federal law.

for Indian retailers.[7]

Kaul next argues that the state policy at the time Stephan sought these warrants provided that these provisions should not be enforced against Indian retailers operating on Indian reservations. First, Kaul states that at the time she applied for a license to sell cigarettes, the state Department of Revenue had a policy of not collecting sales taxes from products sold on Indian reservations. However, an agency rule or regulation has "no force or effect" under Kansas law unless it is filed and published as required by state statute. K.S.A. § 77–425; *Bruns v. Kansas State Bd. of Technical Professions,* 255 Kan. 728, 877 P.2d 391, 395–96 (1994). In *Bruns,* an engineer sought a license from the state's Board of Technical Professions based on reciprocity and waiver of the Kansas examination. 877 P.2d at 392. A state statute granted state licenses based on reciprocity, although an internal board policy provided that such requests would be refused when the applicant's license in the state of original examination no longer was valid. *Id.* 877 P.2d at 392–93. The court noted that K.S.A. § 77–415(4) defines a rule or regulation as a "statement of policy . . . of general application and having the effect of law," *id.* 877 P.2d at 395, and that the licensing board policy was, therefore, a "rule or regulation." However, the court then concluded that it was without force or effect under K.S.A. § 77–425 because it had not been filed and published. *Id.* 877 P.2d at 395–96. Similarly in the present case, the

Department of Revenue's policy of not taxing Indian retailers apparently applied generally to all Indians operating stores on reservations and therefore properly is characterized as a rule or regulation. Yet, it is a rule without force or effect because it was not published or filed as required by K.S.A. § 77–425. Accordingly, Stephan's obligation was to enforce the laws as they appeared in the statutes and as enforced by the state court in *Oyler. See* 803 P.2d at 584.

Second, Kaul introduced two letters which she believes prove that the state law at the time the warrants were applied for prohibited the state from requiring that Indian retailers collect and remit sales tax. Because she alleges that she presented these letters to Stephan while he was executing the search of her store, she argues that he should have realized that he lacked probable cause to proceed with the search. However, these letters fall far short of suggesting that Kaul was exempt from complying with K.S.A. § 79–3615 and K.S.A. § 79–3321. Instead, one letter provided only that Indian *tribes* were not required to collect and remit state taxes—not that Kansas is prohibited from requiring individual Indian retailers to collect and remit taxes from non-Indian customers. The second letter merely stated that the Department of Revenue was investigating whether it had made certain representations to other taxpayers and acknowledges a corporation's request for a private letter ruling.[8]

---

7. Kaul argues that K.S.A. § 79–3321(h)(2) exempts her from collecting and remitting taxes because she is a retail dealer operating on federally-recognized Indian land. K.S.A. § 79–3321 provides in relevant part:

It shall be unlawful for any person: . . . .

(h) To wholesale cigarettes to any person, other than a manufacturer's salesman, retail dealer or wholesaler who is:

. . . .

(2) exempt from state licensing under applicable state or federal laws or court decisions including any such person operating as a retail dealer upon land allotted to or held in trust for an Indian tribe recognized by the United States bureau of Indian affairs.

We do not, however, read this provision as exempting Indian retailers operating on federally-recognized Indian reservations from state taxation. Instead, the provision on its face addresses only exemptions for wholesalers and provides

merely that wholesalers are exempt from submitting state taxes when they sell to Indian retailers who—as determined by state or federal law—are exempt from state licensing. The provision does not exempt Indian retailers themselves from state licensing requirements. In fact, state law, as determined in *Oyler,* 803 P.2d at 584, holds directly the contrary: K.S.A. § 79–3321 requires Indian retailers operating on reservations to collect and remit tax from retail sales made to nonmembers.

8. We also note that because neither letter was written to Kaul, she could not rely on them under the Kansas "Taxpayer Bill of Rights," Kan.Admin.Regs. § 92–19–59, which provides that private letter rulings are not intended for general publication and should not be relied upon by any person other than the person to whom the ruling is issued. *See* Kan.Admin.Regs. § 92–19–59(c). Furthermore, K.A.R. § 92–19–

To the extent these letters reflect an unfiled and unpublished policy of the Department of Revenue, that policy has no force or effect on the law as otherwise established in the statutes and by the courts.

Third, Kaul argues that Stephan could not enforce K.S.A. § 79–3615 and K.S.A. § 79–3321 against her because the governor ordered Stephan not to enforce state tax laws against Indian retailers. However, Kaul presented no evidence that the governor ever gave such an order to Stephan. Instead, Kaul offers two newspaper articles which report on a compact between the governor and the Kickapoo Indian reservation exempting the Kickapoo tribe from collecting state sales tax. Although one article states that the governor planned to sign a similar agreement with the Prairie Band Potawatomi Tribe, no such agreement had been reached at the time Stephan executed the search warrants. Furthermore, the governor did not announce the Kickapoo tribe compact until July 2, 1991—two weeks after Stephan participated in the search at Kaul's store—and apparently excluded Stephan from the negotiations leading to the agreement. Therefore, Kaul has presented no evidence from which we can conclude that the governor ordered Stephan not to enforce the Kansas tax statutes against Indian retailers on the Reservation at the time the search warrants were executed.[9]

■ Because Kaul has failed to prove that K.S.A. § 79–3615(g) and K.S.A. § 79–3321(a) exempt Indian retailers, Stephan did not violate Kaul's Fourth Amendment rights by applying for the search warrants so long as facts known to Stephan and his staff provided them with probable cause to believe that Kaul had violated these provisions. Re-

garding the warrant alleging a violation of K.S.A. § 79–3615(g), Van Petten included an affidavit of Mark Ciardullo, the then-custodian of the Kansas Business Tax Bureau, who swore that Kaul did not have a current or valid Kansas retailers' sales tax registration certificate and was not remitting Kansas sales tax. Regarding the warrant alleging a violation of K.S.A. § 79–3321, the officers observed a bounty of cigarettes without the tax stamps attached in plain view at a store that did not have a valid sales tax registration certificate and which had not collected and remitted any state sales tax.[10] We believe that these facts provided Stephan and his staff probable cause to believe Kaul was violating the criminal tax provisions.

### B. *Stephan's jurisdiction to execute the warrants*

■ Kaul also argues that Stephan was without jurisdiction to enter the Reservation to execute the search warrants and carry out the seizures. Specifically, Kaul argues that the doctrine of tribal sovereignty bars state officials from entering Indian reservations. We recognize that in general, "[f]ederal protection of tribal self-government precludes either criminal or civil jurisdiction of state courts over Indians or their property absent the consent of Congress." Felix S. Cohen, *Handbook of Federal Indian Law* 349 (1982 ed.). However, "at times Congress has retained Indian country status but has delegated partial jurisdiction to states over areas of Indian country or over specific legal subjects." *Id.* at 361.

■ Such a Congressional delegation of jurisdiction has occurred in Kansas. 18 U.S.C. § 3243 (the "Kansas Act") grants the state of Kansas "jurisdiction over all crimes

---

59(d)(2) provides that private letter rulings cease to be valid whenever "a pertinent change in the interpretation of the statute or regulation is made by a court decision." The court's decision in *Oyler*, 803 P.2d 581, which was decided after both letters were written, should have informed Kaul that despite any private letter ruling stating otherwise, Indian retailers were required to collect and remit cigarette sales tax from sales made to non-Indians.

**9.** Because Kaul presents no evidence that the governor issued any order to Stephan, we do not

consider whether Stephan's role of attorney general would have obligated him to override such an order and enforce the statutes, or whether Stephan would have been required to obey such an order and not enforce the tax statutes against Indian retailers.

**10.** Kaul does not argue that these cigarettes were intended for sale to member Indians or that Stephan lacked evidence that they were intended for nonmembers when he obtained and executed the search warrants. Accordingly, we do not address this issue on appeal.

committed by or against Indians on Indian reservations." [11] *See Negonsott v. Samuels,* 507 U.S. 99, 105, 113 S.Ct. 1119, 1123, 122 L.Ed.2d 457 (1993) (holding that the Kansas Act "unambiguously confers jurisdiction on Kansas to prosecute all offenses—major and minor—committed by or against Indians on Indian reservations in accordance with state law."); *Oyler v. Allenbrand,* 23 F.3d 292, 295 (10th Cir.) (same), *cert. denied,* —— U.S. ——, 115 S.Ct. 278, 130 L.Ed.2d 195 (1994). Therefore, because Stephan was acting to enforce state criminal laws on the reservation—here K.S.A. §§ 79–3615, 79–3321 and 79–3322—the Kansas Act delegated to him the jurisdiction to execute the warrant at Kaul's store, including the authority to search and seize her records and unstamped cigarettes. [12] *See State v. Oyler,* 803 P.2d at 582–84 (holding that because Congress enacted the Kansas Act to confer criminal jurisdiction over all Indians in Kansas, Indian selling cigarettes on an Indian reservation was subject to K.S.A. §§ 79–3321 and 79–3322); *State v. Oyler,* 15 Kan.App.2d 84, 803 P.2d 585 (1990) (holding that based on Kansas' exercise of criminal jurisdiction over an Indian on reservation pursuant to Kansas Act and K.S.A. § 79–3321, state had jurisdiction in rem to seize contraband cigarettes from his store on reservation). *Compare Ross v. Neff,* 905 F.2d 1349, 1352 (10th Cir.1990) (holding that Oklahoma police officer was without jurisdiction to arrest Indian inside Indian reservation when the state has neither received by express grant nor acted pursuant to congressional authorization to assume criminal jurisdiction over Indian country).

Kaul argues that despite the Kansas Act's general grant of criminal jurisdiction to Kansas, federal caselaw prohibits state officials from searching and seizing the operations of on-reservation Indian retailers. In *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the Court held that the state has the power to seize unstamped cigarettes as contraband when a tribe does not cooperate in collecting the state's taxes on sales made to non-Indians. *Id.* at 161–62, 100 S.Ct. at 2085–86. However, in *Colville* the state seized the cigarettes outside the reservation's borders as they were being transported to the reservation. *Id.* at 162, 100 S.Ct. at 2085–86. The Court found it "significant" that the seizures in *Colville* took place outside the reservation, "in locations where state power over Indian affairs is considerably more expansive than it is within reservation boundaries." *Id.* The Court deferred consideration of the question of whether a state may enter onto reservations, seize stocks of cigarettes intended for sale to non-members, and then sell the stocks in order to obtain payment for taxes due. *Id.*

---

11. The full text of the Kansas Act reads:

Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.

12. On appeal, Kaul argues that although K.S.A. § 79–3322 attaches a criminal misdemeanor penalty to a violation of K.S.A. § 79–3321, K.S.A. § 79–3321 is truly a "regulatory" law rather than a criminal or "prohibitory" law, and therefore does not fall within the Kansas Act's grant of criminal jurisdiction. The Supreme Court has applied this so-called "prohibitory/regulatory" distinction in holding that states under federal grants of criminal jurisdiction similar to the Kansas Act cannot enforce laws inside a reservation when the state merely attaches criminal penalties to laws that are truly regulatory in nature. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 211, 107 S.Ct. 1083, 1089, 94 L.Ed.2d 244 (1987) ("that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of" Public Law 280's grant of criminal jurisdiction to certain states). The test for whether a law asserted to be criminal is truly regulatory is "whether the conduct at issue violates the State's public policy." *Id.* at 209, 107 S.Ct. at 1088.

Kaul, however, conceded at oral argument that she did not raise this argument until appeal. Because we generally will not consider an issue on appeal that was not raised below, *see In re Walker,* 959 F.2d 894, 896 (10th Cir.1992), we express no opinion whether K.S.A. § 79–3321 is truly a "regulatory" law despite the criminal penalty for a violation of the provision.

Similarly, in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), decided four months before the search and seizure of Kaul's store, the Court enumerated several options state officials could take if they sought to enforce a state tax on cigarettes sold on a reservation by Indians to non-Indians:

> We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State. And under today's decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores. States may also enter into agreements with the tribes to adopt a mutually satisfactory regime for the collection of this sort of tax. And if Oklahoma and other States similarly situated find that none of these alternatives produce the revenues to which they are entitled, they may of course seek appropriate legislation from Congress.

*Id.* at 514, 111 S.Ct. at 912 (citations omitted). Kaul believes that because the Court did not include seizing cigarettes from Indians inside a reservation on this list, Stephan lacked jurisdiction to execute the search warrant at Kaul's store.

However, we do not read *Oklahoma Tax Commission* and *Colville* as necessarily prohibiting state officers from conducting search and seizure operations within a reservation's borders under the authority of a federal grant of criminal jurisdiction to the state. Instead, these opinions merely offer several options that state officials may employ to enforce *regulatory* cigarette tax statutes. Here, Kaul waived the argument that the Kansas statute was regulatory in nature because she did not raise that issue below. Thus, for purposes of this appeal, we accept the designation of K.S.A. § 79-3321 as a criminal statute. Because Stephan was acting to enforce a criminal law under a federal grant of criminal jurisdiction, we believe that Stephan possessed jurisdiction to execute the warrants at Kaul's store.

 A further distinction with *Oklahoma Tax Commission* and *Colville* is that those cases involved a state's attempt to tax an Indian tribe, while in the present case the state asserted authority to tax an individual who is not a member of the tribe where her store is located. The Supreme Court has recognized a distinction between Indians and nonmember Indians in several contexts, and has for most practical purposes treated nonmember Indians in the same manner as non-Indians. *See, for example, Colville,* 447 U.S. at 161, 100 S.Ct. at 2085 (holding that state's taxing jurisdiction over non-member Indians is equivalent to state's taxing jurisdiction over non-Indians); *Duro v. Reina,* 495 U.S. 676, 688, 110 S.Ct. 2053, 2061, 109 L.Ed.2d 693 (1990) (holding that Indian tribes lack tribal jurisdiction over crimes committed by non-member Indians within the tribe's reservation). Furthermore, the Supreme Court has long held that states possess criminal jurisdiction over crimes committed on Indian reservations by non-Indians against non-Indians. *See United States v. McBratney,* 104 U.S. 621, 624, 26 L.Ed. 869 (1881) (holding that Colorado by its admission into the United States acquired criminal jurisdiction over its own citizens and other white persons through the whole territory within its limits, including any Indian reservations); *New York ex rel. Ray v. Martin,* 326 U.S. 496, 499, 66 S.Ct. 307, 308-09, 90 L.Ed. 261 (1946); *United States v. Antelope,* 430 U.S. 641, 643 n. 2, 97 S.Ct. 1395, 1397 n. 2, 51 L.Ed.2d 701 (1977); *Duro,* 495 U.S. at 680-81 n. 1, 110 S.Ct. at 2057 n. 1. *See also United States v. Baker,* 894 F.2d 1144, 1146 (10th Cir.1990) (discussing *McBratney* exception to exclusive federal and tribal jurisdiction over Indian reservations); *State v. Snyder,* 119 Idaho 376, 807 P.2d 55, 56-58 (1991) (holding that state has jurisdiction to prosecute a non-Indian for operating a motor vehicle under the influence of alcohol within the boundary of an Indian reservation); *State v. Jones,* 92 Nev. 116, 546 P.2d 235, 235 (1976) (upholding arrest on Indian reservation of non-Indian found to be in possession of marijuana); *State v. Herber,* 123 Ariz. 214, 598 P.2d 1033, 1034-35 (Ct.App.1979) (same). Because Stephan would have criminal jurisdiction to execute search warrants against a

non-Indian under the *McBratney* exception, and because we do not believe that treating Kaul as a non-Indian would infringe on the Prairie Band Potawatomi Indian Tribe's sovereignty because Kaul is not a member of that tribe, Stephan also had jurisdiction to execute the warrants based on Kaul's non-member status.[13]

## Conclusion

For the reasons stated above, we believe that Stephan had both probable cause and jurisdiction to execute the search warrants at Kaul's store, and therefore did not intrude on Kaul's Fourth Amendment protections against unreasonable searches and seizures. Accordingly, we AFFIRM the decision of the district court.

---

13. Because we do not consider Kaul's Fourth Amendment claim actionable under the facts alleged here, we do not decide whether Stephan is shielded by qualified immunity for any constitutional violations. *See Abeyta,* 77 F.3d at 1255.