**ENGINEERED DATA PRODUCTS, INC., a Michigan corporation, Plaintiff,**

v.

**ART STYLE PRINTING, INC. d/b/a "Dataware," a Texas corporation, Defendant.**

**Civil Action No. 96–K–2385.**

United States District Court, D. Colorado.

Dec. 22, 1999.

William E. Murane, Holland & Hart LLP, Denver, CO, Gregg I. Anderson, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.C., Denver, CO, for plaintiff.

Thomas H. Young, Reed Heimbecher, Dorsey & Whitney LLP, Denver, CO, Walter R. Brookhart, Shook Hardy & Bacon, LLP, Houston, TX, for defendant.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

This is the lead case of four cases in which Judge Walker D. Miller recused himself on October 19, 1999. The cases involve claims of infringement of Plaintiff Engineered Data Products, Inc.'s ("EDP's") patents by Art Style Printing d/b/a/ Dataware ("Dataware") on computer-generated label printing systems.

Pending are Dataware's Motion for Summary Judgment of Non–Infringement of the '816 Patent; Dataware's Motion for Summary Judgment of Invalidity of the '674 Patent; Dataware's Motion for Partial Summary Judgment of Non–Infringement of the '674 Patent Under 35 U.S.C. §§ 271(b) or 271(g); and Dataware's Motion for Partial Summary Judgment Limiting Damages for Alleged Infringement of the '816 Patent. Also pending is Dataware's Motion for Stay of Proceedings related to United States Patent No. 4,939,674 (the '674 patent) pending re-examination of that patent by the United States Patent and Trademark Office.

On November 16, 1999, I entered a Memorandum Opinion Denying Appeal of Order of Magistrate Judge Denying Motion to Enforce Settlement and set a briefing schedule on the motion to stay proceedings. On December 9, 1999, Dataware filed a Request for Ruling on Pending Motions, noting Judge Miller had heard oral argument on the summary judgment motions on September 1, 1998 and had indicated an intent to grant the motions for partial summary judgment but that no order formally granting those motions had been issued.

Dataware requests orders granting the motions for partial summary judgment be issued. It also asserts the label claims of the '816 patent are unrelated to the apparatus and method of the '674 patent and resolution of the reexamination proceeding of that patent will have no bearing on matters relating to the '816 patent. I agree and rule on the Motion for Summary Judgment of Non–Infringement of the '816 Patent.

I grant the motions for partial summary judgment as well as the Motion for Summary Judgment of Non–Infringement of the '816 Patent. I defer ruling on the motion for a stay of proceedings pending completed briefing of the motion to stay in the related case of *EDP v. GBS Corporation*, 99–K–555, currently scheduled for January 4, 2000. I also defer ruling on the Motion for Summary Judgment of Invalidity of the '674 Patent pending determination of the motion to stay.

I. *Dataware's Motion for Partial Summary Judgment of Non–Infringement of the '674 Patent Under 35 U.S.C. §§ 271(b) or 271(g) and Dataware's Motion for Partial Summary Judgment Limiting Damages for Alleged Infringement of the '816 Patent.*

At the hearing on September 1, 1998, counsel representing EDP confessed these

two motions for partial summary judgment and Judge Miller stated the appropriate orders would enter. (Tr. Hearing Sept. 28, 1998 at 3.) This written order ensues. In light of my ruling granting summary judgment of non-infringement of the '816 patent, however, the granting of Dataware's Motion for Partial Summary Judgment Limiting Damages for Alleged Infringement of the '816 Patent is of no effect.

## II. *Dataware's Motion for Summary Judgment of Non–Infringement of the '816 Patent.*

In addition to the '674 Patent, this case involves EDP's U.S. Patent No. 5,083,816 (the '816 patent) for a file label that is both machine and human readable. EDP claims Dataware wilfully infringed the '816 patent by manufacturing and selling labels which are machine and human readable and are copies of EDP's product. Dataware counterclaims the claims of the patents are invalid and unenforceable, it has not infringed the '816 patent, and its alleged infringement was not willful. Dataware seeks entry of judgment that neither the FAST–SCAN® label nor any other label manufactured or sold by Dataware infringes any properly construed claim of the '816 patent. I have reviewed the parties briefs, affidavits and attachments as well as the transcript of the Summary Judgment Motions hearing held before Judge Walker D. Miller on September 1, 1998.

### A. *Standard for Summary Judgment.*

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The adverse party must set forth specific facts showing there is a genuine issue for trial. The court views the record in the light most favorable to the party opposing the motion. *Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir. 1996). A factual issue is genuine "if a reasonable jury could return a verdict for the non-movant." *Id.*

### B. *Merits.*

Dataware contends the labels it manufactures and sells do not infringe on any claim of the '816 patent under 35 U.S.C. § 271(a). A literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is a matter of law. *Id.* at 979. Here, in addition to literal infringement, EDP asserts Dataware's labels infringe the patent under the doctrine of equivalents, *i.e.,* the Dataware label contains elements identical or equivalent to each claimed element of the '816 patent. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Although equivalents is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment where no reasonable jury could find equivalents. *Id.* at 39 n. 8, 117 S.Ct. 1040. I consider the motion for summary judgment on the grounds that the Dataware labels do not (1) literally infringe the claims of the '816 patent and (2) do not infringe the '816 patent under the doctrine of equivalents.

Dataware claims its labels do not infringe the claims of the '816 patent when properly construed. As stated, this involves an analysis of the proper construction of the asserted claim and a determination as to whether the Dataware labels infringe the asserted claim as properly construed. *See Markman,* 52 F.3d at 976. In determining the proper construction of a claim, there are numerous sources that may be utilized for guidance, including both intrinsic evidence (e.g., the patent specification and file history) and extrinsic evidence (e.g., expert testimony). *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). I look first to

the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and the prosecution history, as the most significant source of the legally operative meaning of disputed claim language. *Id.*

Dataware asserts its labels do not literally infringe the '816 patent because its alpha-numerics are all the same size, while an amendment to the patent specified that the alpha-numerics in one part of the EDP label be larger than those in another part. Dataware maintains the prosecution history of the patent bars EDP from arguing either (1) that the patent claims encompass labels in which the alpha-numerics are the same size or (2) that the human readable code may be expanded to encompass background color. On this second issue, Dataware points to dependent claims 2 and 8 which distinguish "human readable code" from "background color" in terms indicating the background color comprises a "third code." Dataware also points to language in the application in which EDP used the term "character" to distinguish prior art and explain the advantages of the size of different characters.

In response, EDP asserts factual disputes preclude summary judgment. EDP focuses on the term "symbols" in claims 1 and 7 of the '816 patent. The last paragraphs of these claims refer to "symbols of said human readable code," with larger symbols in the second horizontal row than such symbols in the first horizontal row. The allegedly infringing Dataware FAST–SCAN® label has smaller color blocks on top than on the bottom but the same size alpha-numerics.

EDP contends the term "symbol" is not defined in the patent and was not discussed by the Patent Office examiner or EDP's attorney during the prosecution process. Arguing the term is ambiguous, EDP provides extrinsic evidence, including the affidavit of expert Robert Sterne, to the effect that "symbol" is sufficiently broad to include color.

In reply, Dataware asserts construction of the claims of the '816 patent is a matter

of law and not a factual issue precluding summary judgment. It states the claims are not ambiguous, citing a portion of Sterne's report in which he concluded the meaning of the claims of the '816 patent "is clear without any ambiguity." (Reply, Ex. A at ¶ 35.) Finally, Dataware contends EDP is estopped from arguing the background colors are part of the symbols of human readable code because EDP's own prior art (the '674 patent) discloses the use of color blocks of different sizes. Dataware seeks a ruling that the symbols of human readable code in the '816 patent cannot be interpreted to include the background colors.

At the hearing on the motion, counsel agreed that, if the court were to decide that the term "symbols of human-readable code" in claims 1 and 7 does not include color, then there would be a finding of noninfringement, whereas concluding the term did not include color, would result in a finding of infringement. (Tr. Hearing Sept. 28, 1998 at 27–28.)

 In interpreting the term "symbols of said human readable code," I first look to the words of the claims themselves to define the scope of the patented invention. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed.Cir.1995). Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history. *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir. 1996) (holding "[a] technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning") (citations omitted).

■ Second, I review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Markman,* 52 F.3d at 979. "Claims must be read in view of the specification, of which they are a part." *Id.* The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, it is always highly relevant to the claim construction analysis. Usually, the specification is dispositive; it is the single best guide to the meaning of a disputed term. *Vitronics,* 90 F.3d at 1582.

Third, I may also consider the prosecution history of the patent, here in evidence. *See Markman,* 52 F.3d at 980. This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims and is often of critical significance in determining the meaning of the claims. *Id.* Included within an analysis of the file history may be an examination of the prior art cited therein. *Vitronics,* 90 F.3d at 1583.

■ In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term and, in such circumstances, it is improper to rely on extrinsic evidence. *Id.* In those cases where the public record, *i.e.,* the claims, specification, and file history, unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *Id.*

The '816 patent specification states:

In general, the label of the present invention contains a message displayed in three codes. A first code is a machine readable code such as a bar code, a second code is in a human readable for showing letters and digits. A third code, consisting of background colors behind the human readable code, provides additional visual indication of sequencing of the media to which the labels are attached.

(Substitute Br.Supp.Mot.Summ.J., Ex. A at col. 2, ln. 63 to col. 3, ln. 2.)

The Abstract and Summary of the Invention emphasize the importance of the large letters in the lower portion of the label. (*Id.* at col. 2, ln. 34–37.) In addition the background color is distinguished from the human readable characters in the Summary of the Invention. (*Id.* ln. 27–31.) The '816 patent explains the human readable code may be a number of letters or numbers and that it is not necessary to have only two letters or numbers adjacent to the bar code but never suggests the background color could be the human readable code. (*Id.,* col. 3, ln. 32–42.)

Moreover, the claims distinguish the human readable code from the background color. Claims 2–4 and 8–10 distinguish " 'the human readable code' from the background color" which is printed "around said human readable code wherein said background color comprises a third code. . . ." (*Id.,* col. 4, ln. 20–31.) Dependent Claims 3 and 9 state the human readable code is printed vertically along the longitudinal axis of the label, while dependent Claims 4 and 10 require that it be printed horizontally. (*Id.,* col. 4.)

I find the specification itself, the best guide to the meaning of the term, dispositive. *See Vitronics,* 90 F.3d at 1582. The only way to construe the term "human readable code" that is consistent with the specification necessarily excludes a colored background. The specification is clear, the human-readable code is alpha-numeric and the colored background around the human readable code is a separate and distinct feature, indicated as a third code.

■ Even if I did not consider the specification itself dispositive, the file history is also consistent with a finding that the human readable code required by claims consists of the alpha-numeric characters, rather than the background color. The

arguments presented to the Patent Office to distinguish the prior art, consistent with both the specification and the claims, were based upon the size of the alpha-numerics, referring repeatedly to the size of the characters on the label rather than the background color. (Substitute Br. Supp.Mot.Summ.J., Ex. B, Response at ¶. 6–7.) I therefore conclude, based on the intrinsic evidence that, properly construed, "symbols of said human readable code" does not include background color. I next determine whether a genuine issue exists as to whether the Dataware FAST–SCAN® label infringes the asserted claim as properly construed. *See Markman,* 52 F.3d at 976.

■ "To establish literal infringement, every limitation set forth in a claim must be found in the accused product exactly." *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995). Both independent Claims 1 and 7 and all claims depending thereon require the symbols of the human readable code in the second horizontal row of the label be larger than the symbols of the human readable code in the second column of the first horizontal row. It is undisputed that the readable code on the Dataware FAST–SCAN® label is printed in characters that are all the same size. For this reason, the Dataware labels do not literally infringe the claims of the '816 patent because failure to meet a single limitation is sufficient to negate infringement. This is apparently why counsel agree that construing "symbols of said human readable code" so as not to include background color, must result in summary judgment being entered for Dataware.

■ On this basis too, the claim for infringement under the doctrine of equivalents must fail because no reasonable fact finder could find equivalents. *See Warner–Jenkinson,* 520 U.S. at 39 n. 8, 117 S.Ct. 1040. The essential inquiry here is "Does the accused product . . . contain elements identical or equivalent to each claimed element of the patented invention?" *Id.* at 40, 117 S.Ct. 1040.

The '816 patent discloses the use of the background color as an optional third code and not as the required human readable code. Thus, EDP cannot use the doctrine to include colored background within the meaning of the "human readable code" limitation when the intrinsic evidence has specifically excluded it from the scope of the claims. Stated differently, infringement under the doctrine of equivalents cannot be based upon an incorrect claim construction. *See Insituform Technologies, Inc. v. Cat Contracting, Inc.,* 99 F.3d 1098, 1109 (Fed.Cir.1996). The intrinsic evidence does not support EDP's contention that the '816 patent discloses the possibility that the background color may be an equivalent for the required human readable code. I find no reasonable jury could find such equivalents.

### C. *Conclusion.*

It is undisputed that the alpha-numeric characters of the human readable code of Dataware's FAST–SCAN® label are all of the same size. Based on the intrinsic evidence, properly construed, the term "symbols of said human readable code" in the claims of the '816 patent cannot be interpreted to be the background color around the alpha-numeric characters. Thus, as a matter of law, the human readable code required by all of the claims must be interpreted to exclude the colored background. Accordingly, the claims of the '816 patent cannot cover Dataware's FAST–SCAN® label or any other label wherein all of the alpha-numerics of the human readable code are the same size. Dataware is therefore entitled to summary judgment that neither its FAST–SCAN® label nor any other Dataware labels wherein the alpha-numeric characters of the human readable code are of the same size infringe either literally or by the doctrine of equivalents any claim of the '816 patent. Accordingly, I grant Dataware's Motion for Summary Judgment of Non–Infringement of the '816 Patent.

For the aforesaid reasons,

IT IS ORDERED THAT Dataware's Motion for Partial Summary Judgment of Non–Infringement of the '674 Patent Under 35 U.S.C. §§ 271(b) or 271(g) is GRANTED;

IT IS FURTHER ORDERED THAT Dataware's Motion for Partial Summary Judgment Limiting Damages for Alleged Infringement of the '816 Patent is GRANTED and damages from the alleged infringement of the '816 patent are limited to labels manufactured, sold or used by Dataware after October 11, 1996, the date suit was filed herein;

IT IS FURTHER ORDERED THAT Dataware's Motion for Summary Judgment of Non–Infringement of the '816 Patent is GRANTED;

IT IS FURTHER ORDERED THAT ruling on the Motion for Stay of Proceedings is deferred pending completed briefing of the motion to stay in the related case of *EDP v. GBS Corporation*, 99–K–555, currently scheduled for January 4, 2000;

IT IS FURTHER ORDERED THAT ruling on the Motion for Summary Judgment of Invalidity of the '674 Patent is deferred pending determination of the Motion for Stay of Proceedings.