**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| JOHN R. HUGHES; DORIS JEAN HUGHES, his wife; PAUL R. CLARK, individually; HUGHES & CLARK, a Partnership, <br><br> Plaintiffs-Appellants, <br><br> OSCAR MCLIND; J. O. SAWYER; ONA SAWYER, <br><br> Plaintiffs, <br><br> v. <br><br> MWCA, INC., an Idaho Corporation; UNITED STATES OF AMERICA; ROBERT G. SMITH; VAUGHN SOWARDS; DENNIS R. GARCIA; JOSEPH A. GARCIA; MICHAEL J. GARCIA; FABIAN A. GARCIA, <br><br> Defendants-Appellees. | No. 00-2443 <br> (D.C. No. CIV-98-846 JC/WWD) <br> (D. N.M.) |

**ORDER AND JUDGMENT** *

Before **HENRY, BRISCOE,** and **MURPHY** , Circuit Judges.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiffs John R. Hughes, Doris Jean Hughes, Paul R. Clark, and Hughes & Clark appeal the district court's entry of summary judgment in favor of defendants. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## BACKGROUND

This case arises from a dispute over the ownership rights to a deposit of scoria on Red Hill, a parcel of property located in Rio Arriba County, New Mexico. Plaintiffs own a surface estate in Red Hill as successors in interest of United States patents issued under the Stock Raising Homestead Act of 1916, 43 U.S.C. § 299 (SRHA), which reserve "coal and other minerals" and access to the reserved minerals to the United States.

Scoria is a form of volcanic cinder which, by the 1970s, had became commercially valuable for use in landscaping and as gas barbeque briquets. MWCA and the United States (through the Bureau of Land Management) entered into contracts allowing MWCA to mine the scoria deposit beginning in 1988. The

individual defendants allegedly assisted with MWCA's access to the excavation area.

Plaintiffs sued, seeking quiet title, ejectment, restitution, and damages for trespass and conversion. The district court entered summary judgment in favor of defendants and subsequently denied plaintiffs' motion for reconsideration. This appeal followed.

## DISCUSSION

On appeal, plaintiffs argue that the district court erred as a matter of law in ruling that the Red Hill scoria and the right of access to the scoria were reserved to the United States under the SRHA patents. They also contest the court's determination that the United States properly sold the scoria to MWCA. Plaintiffs assert that under the general mining laws, the scoria should have been located, not sold, and that they are holders of valid location claims. "We review the district court's grant . . . of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c)." *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (quotation omitted).

### A.     SRHA Claims

Plaintiffs' assertion that the SRHA land patents entitle them to the scoria and to the access to the scoria has been put to rest by the Supreme Court in *Watt v. Western Nuclear, Inc.*, 462 U.S. 36 (1983). In that case, the plaintiff, a

successor in interest under an SRHA patent, obtained the lands in question as a source of gravel for road paving purposes. The Bureau of Land Management challenged the plaintiff's extraction of gravel on the basis that the United States, as owner of the retained mineral estate, had the sole right to the gravel.

In ruling against the surface estate owner, the Court held that the meaning of the term "mineral," as used in the SRHA, is so imprecise that it must be interpreted in light of Congress's purpose in severing the surface estate from the mineral estate. *See id.* at 42-47. Congress intended

> to facilitate the concurrent development of both surface and subsurface resources. While Congress expected that homesteaders would use the surface of SRHA lands for stockraising and raising crops, it sought to ensure that valuable subsurface resources would remain subject to disposition by the United States, under the general mining laws or otherwise, to persons interested in exploiting them. It did not wish to entrust the development of subsurface resources to ranchers and farmers.

*Id.* at 47.

The SRHA "was designed to supply a method for the *joint use* . . . by the entryman of the surface thereof and the person who shall acquire from the United States the right to prospect, enter, extract and remove all minerals that may underlie such lands." *Id.* at 50 (quotation omitted). In light of this understanding, the Court "interpret[ed] the mineral reservation in the Act to include substances that are mineral in character (*i.e.*, that are inorganic), that can

-4-

be used for commercial purposes, and that there is no reason to suppose were intended to be included in the surface estate." *Id.* at 53.

There is no question that the scoria in this case meets the Court's definition of minerals reserved to the United States under the SRHA. It is mineral in character and may be used for commercial purposes. Furthermore, there is no indication that Congress intended scoria to be included in the surface estate.

Contrary to plaintiffs' argument, the case of *Poverty Flats Land & Cattle Co. v. United States*, 788 F.2d 676 (10th Cir. 1986) does not affect the *Western Nuclear* holding. *Poverty Flats* involved the ownership rights to caliche[1] on lands patented under the now-repealed Taylor Grazing Act, not the SRHA. *Id.* at 677-78. Unlike the mineral reservation clause required by the SRHA, the scope of such a clause in a Taylor Grazing Act conveyance is discretionary and not dictated by statute. *Id.* at 678. The Tenth Circuit, therefore, looked to the parties' understanding to resolve a dispute over whether caliche was included in the mineral reservation. The value of the mineral at the time of the patent was relevant to that determination. *Id.* at 683. It has no bearing, however, on the meaning of an SRHA mineral reservation clause.

---

[1] Caliche is a crust of calcium carbonate that forms on stony soil in arid regions.

The district court correctly determined that the land patents neither conferred rights to the scoria nor granted plaintiffs exclusive access to the scoria.

**B.    Claims under the mining laws and regulations**

Plaintiffs also assert entitlement to the scoria under general mining laws and regulations.  The General Mining Law of 1872 provides that, with certain exceptions:

> [A]ll valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law. . . .

30 U.S.C. § 22.  Depending on the type of mineral involved, private parties may acquire mineral deposits in one of three ways: by location of a mining claim,[2] by lease, or by purchase.  *See* 43 C.F.R. § 3812.1;  *see also* George C. Coggins & Robert L. Glicksman, *3 Public Natural Resources Law*, J-1 to J-4 (2001).  Typically, hardrock  minerals, such as gold, silver, copper, and lead, are acquired by locating a mining claim.  Regulations relating to locatable minerals are set out in 43 C.F.R., Part 3800.  Other federally owned minerals can be acquired only by

---

[2]    Location of a mining claim requires staking the corners of the claim, posting notice on the property, and recording the claim under the appropriate state laws.  *See* 43 C.F.R. § 3831.1.

leasing under the Mineral Leasing Act of 1920, 30 U.S.C. § 181 and the regulations in 43 C.F.R., Part 3100. These leasable minerals include oil and gas.

The third category of minerals is acquired by purchase from the United States (through the Bureau of Land Management or the Forest Service) under the Materials Act of 1947, 30 U.S.C. § 601. In 1955, Congress enacted the Surface Uses Act which removed deposits of common mineral materials from the location method and made them available for purchase under the Materials Act. *See Poverty Flats,* 788 F.2d at 680. The statute provides that:

> No deposit of common varieties of sand, stone, gravel, pumice, pumicite, or cinders and no deposit of petrified wood shall be deemed a valuable mineral deposit within the meaning of the mining laws of the United States so as to give effective validity to any mining claim hereafter located under such mining laws: *Provided, however*, That nothing herein shall affect the validity of any mining location based upon discovery of some other mineral occurring in or in association with such a deposit. "Common varieties" . . . does not include deposits of such materials which are valuable because the deposit has some property giving it distinct and special value. . . .

30 U.S.C. § 611. The sale of minerals is covered in 43 C.F.R., Part 3600.

Without dispute, common varieties of scoria are generally sold pursuant to § 611. Plaintiffs, however, contend that scoria underlying an SRHA estate should be classified as a locatable material, on the theory that § 611 applies only to public lands: that is, lands entirely owned by the government, and not to the split estate resulting from an SRHA patent. Plaintiff's proposition finds little support

in the law,[3] and, in any event, has no applicability to the facts of this case. There is an express SRHA provision stating that reserved minerals are "subject to disposal by the United States in accordance with the . . . mineral land laws in force at the time of such disposal." 43 U.S.C. § 299; *see also* 43 C.F.R. § 3814.1(a) (incorporating the SRHA statutory language). Because plaintiffs' claims were located after the effective date of the Surface Use Act, they are of no legal significance.[4]

As a final argument, plaintiffs assert that there is a factual dispute on whether the particular scoria at issue is excluded from the salable mineral category because it has "some property giving it distinct and special value." 30 U.S.C. § 611. A review of the record shows that plaintiffs provided no

---

[3] The Interior Board of Land Appeals has determined in adjudications and by regulation that the term "public lands" includes mineral deposits reserved under the SRHA. Adjudications include *Texaco, Inc.*, 59 IBLA 155 (1981) (included in Gower Federal Service database on Westlaw) and *Mobil Oil Corp*., 79 IBLA 76 (1984) (analyzing contractual rights of SRHA surface owner and purchaser of materials under the Materials Act). In 43 C.F.R., Part 3600 the Secretary of Interior has granted broad authority to the Bureau of Land Management for the disposal of common mineral materials. If an agency's statutory interpretation is conducted under an express or implied delegation, this court accepts a "'reasonable interpretation made by the administrator of [the] agency.'" *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1261(10th Cir. 2001) (quoting *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984))

[4] Plaintiffs also asserted a 1953 mining claim. It is uncontested, however, that the earlier claim is invalid for failure to file a certificate of location with the Bureau of Land Management.

evidence that the Red Hill scoria has a special value. Accordingly, summary judgment was the appropriate disposition of this issue.

## CONCLUSION

The district court correctly analyzed and disposed of plaintiffs' claims. Therefore, we AFFIRM the judgment of the district court.

Entered for the Court


Michael R. Murphy
Circuit Judge